UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| WILLIE D. STORNES, #233446, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-739 |
| | ) | |
| v. | ) | Honorable Robert J. Jonker |
| | ) | |
| VAUGHN GUILD, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a civil action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. Plaintiff was an inmate at the Parnall Correctional Facility (SMT) on July 31, 2007 when he filed his unverified complaint. On October 28, 2008, plaintiff was released on parole.[1] (docket # 56). The defendant is a Vaughn Guild, a psychologist employed by the Michigan Department of Corrections at the West Shoreline Correctional Facility (MTF). Plaintiff alleges that in 2006 he was "involuntarily terminated" from a sex offender psychotherapy (SOP) program at MTF by defendant. (Compl. at 2, docket # 1). He sued Psychologist Guild in his official and individual capacities. Plaintiff's complaint requests an injunction compelling his immediate placement into a SOP program and an award of monetary damages. (*Id.*, 4).

_____

[1]The criminal conviction forming the basis of plaintiff's present parolee status is his conviction for fleeing and eluding a police officer. MICH. COMP. LAWS §257.602a(3)(a). On March 17, 2004, plaintiff was sentenced as a habitual offender to 1-to-10 years' imprisonment. Plaintiff's criminal history includes a fourth degree criminal sexual conduct (CSC) conviction. MICH. COMP. LAWS § 750.520e. He received a two-year sentence on the CSC conviction which was discharged on October 19, 2004.

The matter is now before the court on defendant's motion for summary judgment. (docket # 57). On December 2, 2008, the court entered an order notifying plaintiff of his opportunity to submit affidavits, documents and other materials in opposition to defendant's motion on or before December 30, 2008. (12/02/08 Order, docket # 59). Plaintiff elected not to file a response to defendant's motion. For the reasons set forth herein, I recommend that defendant's motion for summary judgment be granted, and that judgment be entered in defendant's favor on all plaintiff's claims.

## **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir.

2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007).

Although plaintiff elected not to file a response to defendant's motion for summary judgment, the court may not for that reason alone enter judgment against plaintiff. *See Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991); *accord Cacevic v. City of Hazel Park*, 226 F.3d 483, 486 (6th Cir. 2000). Rather, the court is required to examine the movant's summary judgment motion to ensure that he has discharged his initial burden.

**Facts**

The following facts are beyond genuine issue. The psychological screening conducted at the MDOC's Reception Center in 2004, when plaintiff began his most recent period of incarceration, revealed that plaintiff had no intellectual impairment and no serious mental illness.

(docket # 58, Ex. 1).[2]  On January 30, 2006, plaintiff was admitted to MTF's sex offender psychotherapy (SOP) program headed by Psychologist Vaughn Guild. (Ex. 2). In April of 2006, plaintiff elected to withdraw from the program, when he encountered his first written work assignment. (Ex. 4; Ex. 10, ¶¶ 5, 9). Plaintiff had been a minimal participant during his few months in the SOP program. He did not participate in discussions, and he received "unsatisfactory" ratings in both February and March of 2006. (Ex. 5). He denied responsibility for his criminal sexual conduct, and such denial of responsibility is "inappropriate" for participation in a SOP program. (Ex. 10, ¶¶ 4, 7). Plaintiff claimed that he could not complete written work and stated that he wanted to participate in a program where he would not be required to write. Plaintiff's psychological tests results did not support this assertion. (*Id.*, ¶ 11). Psychologist Guild's professional credentials include teaching courses on cognition and learning at Western Michigan University. He has been recognized in state court as an expert witness on developmental disabilities. Psychologist Guild opined that plaintiff would have been able to successfully complete the SOP program at MTF if he had been willing to work, participate, and admit responsibility for his crime. (*Id.*, ¶ 13).

Psychologist Guild informed plaintiff that his three available options were: (1) continuing in the SOP program, in which plaintiff would be required to accept responsibility for his crime, participate in group discussions, and do the best he could when he encountered written assignments and to request help from other prisoners or Guild when he needed assistance; (2) withdrawing from the group and requesting placement on the waiting list for the non-literate SOP group; or (3) electing not to participate in a SOP program. (Ex. 10, ¶¶ 5, 6). Plaintiff was aware if

---

[2]All the exhibits referenced herein are found within docket entry # 58.

he withdrew from the SOP program he might have a lengthy wait before an opening would be available in the non-literate SOP program. (*Id.*, ¶ 9). Plaintiff chose to withdraw. (*Id.*).

Psychologist Guild placed plaintiff's name on the waiting list for "a non-literate SOP group" and referred plaintiff's request to Psychologist James Boland, M.A., who was in charge of MTF's non-literate SOP group. (Ex. 10, ¶¶ 8, 9). After documenting plaintiff's withdrawal from the SOP group in a 2006 termination report (Ex. 4), Psychologist Guild had no further communications from or about plaintiff until being served with this lawsuit. (Ex. 10, ¶10).

On November 1, 2006, Psychologist Boland interviewed plaintiff in response to his request to participate in the non-literate SOP group. Psychologist Boland found that plaintiff was not an appropriate candidate for admission into the program because he refused to accept responsibility for his criminal behavior:

> Inmate admits to contact with his victim Tammy Nailor. He describes the acts as consensual and does not acknowledge his behavior [a]s assaultive or deviant. Though he admits to using and abusing drugs he maintains his inno[c]ence regarding his conduct in the instant offense and does not identify any goals to work on which would warrant Sex Offender Psychotherapy. For these reasons inmate Stornes is not an appropriate candidate for group sex offender psychotherapy at this time.

(Ex. 8).

On April 26, 2006, plaintiff was transferred to the Parnall Correctional Facility (SMT). On July 12, 2007, plaintiff began participating in a SOP program at SMT. Plaintiff filed this lawsuit on July 31, 2007. Plaintiff completed the SOP program at SMT on January 22, 2008. (Ex. 9).

Plaintiff testified at his July 31, 2008 deposition that he believed that Michigan's parole board would have released him from prison if he had completed the SOP program he started

at MTF. He stated that he suffered "emotional injuries" because defendant removed him from the SOP program. (Ex. 11 at 56-57). On October 28, 2008, plaintiff was released on parole.

### Discussion

**1.    Mootness**

Plaintiff's claim for injunctive relief is moot as a result of his parole. *See Cardinal v. Metrish*, No. 08-1562, __ F.3d __, 2009 WL 1098759, at * 2 (6th Cir. Apr. 24, 2009); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

**2.    Eleventh Amendment Immunity**

Plaintiff's constitutional claims for monetary damages against defendant in his official capacity is barred by Eleventh Amendment immunity. Eleventh Amendment immunity is a threshold issue. *See Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006). A suit against a state officer in his official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). The Eleventh Amendment generally[3] bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*,

---

[3] The well-recognized exception to the general rule is an action for prospective, non-monetary relief such as an injunction against a state officer in his or her official capacity based upon a claim that the state officer's action is unconstitutional. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)(*en banc*).

357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendant is entitled to judgment in his favor as a matter of law on plaintiff's claims for monetary damages against him in his official capacity.

### 3. Section 1983 Claims Against Defendant in his Individual Capacity

Plaintiff sued defendant in his individual capacity for damages under section 1983. Section 1983 is not itself a source of any substantive right, but merely provides a remedy for deprivation of rights that are elsewhere conferred by federal law. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1994). "Because Section 1983 is not itself a source of substantive rights, but only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a Section 1983 claim." *Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006); *see Harris v. Detroit Pub. Sch.*, 245 F. App'x 437, 445 (6th Cir. 2007).

The Eighth, Fifth,[4] and Fourteenth Amendments are mentioned in plaintiff's complaint. (docket # 1 at 2, 4). Upon review, I find that plaintiff has not presented evidence on which a reasonable jury could find any constitutional violation.[5] Plaintiff did not submit evidence

---

[4] The Fifth Amendment restricts the actions of the federal government. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 n.3 (6th Cir. 2007). There is no federal defendant in this lawsuit.

[5] Plaintiff's complaint did not identify any injury that plaintiff had suffered as a result of defendant's actions. His deposition testimony clarified that he was claiming emotional injury. Such claims are barred by the Prison Litigation Reform Act (PLRA). The relevant section of the PLRA states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other

on which a reasonable trier of fact could find in plaintiff's favor on either the objective or subjective components of an Eighth Amendment claim of deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 102-05 (1976); *Cardinal v. Metrish*, No. 08-1562, __ F.3d __, 2009 WL 1098759, at * 6 (6th Cir. Apr. 24, 2009). He presented no evidence supporting a claim under the Fourteenth Amendment's Equal Protection Clause. *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008); *see also Dodson v. Wilkinson,* 304 F. App'x 434, 441 n.1 (6th Cir. 2008). Plaintiff's complaint is devoid of any reference to the Fourteenth Amendment's Due Process Clause, but his deposition suggests that he may have been attempting to assert a due process claim based on his perception that the date of his release on parole was delayed by defendant's actions. Such a claim, however, could not survive defendant's motion for summary judgment. It is well established that there is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11. Rather, a liberty interest is present only if state law entitles an inmate to be released on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). Parole in Michigan is committed to the parole board's discretion. Michigan prisoners do not have any protected liberty interest in parole. *See Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir.

---

correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008). Defendant is entitled to judgment in his favor as a matter of law on this alternative ground.

1994)(*en banc*); *see also Caldwell v. McNutt*, 158 F. App'x 739, 740-41 (6th Cir. 2006); *Crump v. Lafler*, No. 1:08-cv-820, 2008 WL 5382445, at * 1 (W.D. Mich. Dec. 22, 2008).

Alternatively, defendant is entitled to judgment in his favor on plaintiff's section 1983 claims on the basis of qualified immunity. "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability." *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007); *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006); *see also Streater v. Cox*, No. 08-1631, 2009 WL 1391533, at * 4 (6th Cir. May 15, 2009). Plaintiff did not address, much less carry, his burden.

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007). The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court. *See Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2006).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), endorsed a two-prong analysis for addressing qualified immunity issues. The first prong is whether

the plaintiff has alleged and supported with evidence[6] facts showing that the defendant's conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 550 U.S. 372, 376-77 (2007); *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007). Plaintiff failed to satisfy the first prong for the reasons previously stated herein.[7] The second prong of the qualified immunity inquiry is whether the right was "clearly established at the time of the defendant's alleged misconduct. *Saucier*, 533 U.S. at 201. Allowing plaintiff to withdraw from a prison program because he refused to perform the work it required did not violate any clearly established right. Defendant is entitled to judgment in his favor on plaintiff's section 1983 claims for damages on the alternative basis of qualified immunity.

    **4.**    **ADA Claim**

Plaintiff claim under Title II of the ADA requires little discussion. Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

---

[6] A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004).

[7] Judges are permitted to exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

entity." 42 U.S.C. § 12132. Plaintiff failed to submit evidence on which any reasonable trier of fact could find that he was a "qualified individual with a disability."[8] *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Haas v. Quest Recovery Services, Inc.*, 247 F. App'x 670, 672 (6th Cir. 2007). Further, plaintiff may not maintain an action under Title III of the ADA against defendant in his individual capacity. "Title II of the ADA does not [] provide for suit against a public official in his individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).

### Recommended Disposition

For the foregoing reasons, I recommend that defendant's motion for summary judgment (docket # 57) be granted.

Dated:  May 27, 2009                /s/  Joseph G. Scoville
                                    United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[8] A prisoner's propensity for sexual misbehavior does not constitute a "disability" within the meaning of the ADA. "The ADA expressly states that 'disability' does not include 'sexual behavior disorders.'" *Hawkins v. Michigan Parole Bd.*, No. 98-1045, 1999 WL 506996, at * 1 (6th Cir. June 10, 1999) (citing 42 U.S.C. § 12211(b)(1)); *see Benner v. Carrill*, No. 07-11606, 2008 WL 2696138, at * 5 (E.D. Mich. July 2, 2008).